1  **COHELAN KHOURY & SINGER**
2  Isam C. Khoury (SBN 58759)
   ikhoury@ckslaw.com
3  Maggie K. Realin (SBN 263639)
4  mrealin@ckslaw.com
   605 C Street, Suite 200
5  San Diego, CA 92101
6  Telephone: (619) 595-3001
   Facsimile: (619) 595-3000
7
8  Attorneys for Plaintiff Hattie K. Arres

9            **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11  HATTIE K. ARRES, Individually and     **Case No.**
12  On Behalf of All Others Similarly
    Situated,                             **CLASS ACTION COMPLAINT**
13
                                          **1. VIOLATION OF CALIFORNIA**
14           Plaintiff,                    **UNFAIR COMPETITION LAW,**
        v.                                **BUSINESS & PROFESSIONS**
15                                         **CODE SECTIONS 17200,** *et seq.*
16  LANGER JUICE COMPANY, INC., a         **2. VIOLATION OF CALIFORNIA**
    California Corporation; and DOES 1     **FALSE ADVERTISING LAW,**
17  through 100, Inclusive                 **BUSINESS & PROFESSIONS**
                                          **CODE SECTIONS 17500,** *et seq.*
18                                         **3. VIOLATION OF CALIFORNIA**
19           Defendants.                   **CONSUMERS LEGAL**
                                          **REMEDIES ACT, CIVIL CODE**
20                                         **SECTIONS 1750,** *et seq.*
21                                         **4. BREACH OF WARRANTY**
                                          **5. UNJUST ENRICHMENT**
22
23                                         **JURY TRIAL DEMANDED**
24
25
26
27
28

*(left margin, vertical text)* COHELAN KHOURY & SINGER / 605 C Street, Suite 200 / San Diego, CA 92101

Plaintiff HATTIE K. ARRES ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through the undersigned counsel, and upon information and belief and investigation of counsel, hereby alleges as follows against LANGER JUICE COMPANY, INC. and DOES 1 through 100 ("Langer Juice" or "Defendant"):

## PARTIES

1.    Plaintiff, Ms. Hattie K. Arres, is, and was at all relevant times herein mentioned, a resident of California who purchased Langer 100% Juice products for herself and for her household.

2.    Plaintiff is informed and believes and thereon alleges that LANGER JUICE COMPANY, INC., at all relevant times herein alleged, is a California corporation with its headquarters located at 16195 Stephens Street, City of Industry, California 91745. Plaintiff is further informed and believes and thereon alleges that Langer Juice is and was at all relevant times herein admitted to do and does conduct business within the State of California, the County of Los Angeles and this judicial district under the laws of the State of California.

3.    Plaintiff is informed and believes and thereon alleges that Langer Juice is the manufacturer of Langer 100% Juice products ("Products").

4.    Plaintiff is unaware of the true names, capacities, relationships, and extent of participation in the conduct alleged of Defendants sued as DOES 1 through 100, but is informed and believes and based on that alleges the DOE Defendants are legally responsible for the wrongful conduct alleged, and sues these Defendants by such fictitious names. Plaintiff will amend this complaint when their true names and capabilities are ascertained.

5.    Plaintiff is informed and believes and based thereon alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant is legally attributed to the other

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

Defendants.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action occurred in this District and Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through promotion, marketing, distribution, and sale of its products in this District.

## INTRODUCTION

8.      Plaintiff purchased Product(s) manufactured by Langer Juice in California during the Class Period as defined herein.

9.      Defendant labels and advertises its Langer 100% Juice products with statements such as "100% Juice" or "100% Pure Juice." These claims are false and misleading because the products contain various added ingredients, including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Such additives are inconsistent with consumers' reasonable expectations of a product labeled as "100% Juice" or "100% Pure Juice." As a result, consumers—including Plaintiff—are misled into believing they are purchasing beverages made solely from juice, when in fact they are not. By using these deceptive labels and representations, Defendant has implemented a misleading marketing strategy that has impacted consumers both in California and across the United States.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

10.    Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class and a California Subclass of consumers who purchased the Products. Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the premium consumers paid for Defendant's misleading tactics and Defendant's ill-gotten gains, as consistent with permissible law including, for example, restitution, disgorgement, and any applicable penalties). Plaintiff further seeks to permanently enjoin Defendant's unlawful advertising practices for the benefit of consumers, including Plaintiff and the Class.

11.    Plaintiff seeks an order compelling Langer Juice to (1) cease marketing its products using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Langer Juice was unjustly enriched, and (4) destroy all misleading and deceptive materials and products.

## SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS AND DECEPTIVE ACTS

12.    In an effort to boost profits and gain an unfair competitive advantage over companies that comply with labeling laws, Defendant falsely and misleadingly labels, manufactures, markets, and sells all flavors, sizes, and varieties of its Langer 100% Juice products. These products are sold both online and in retail stores throughout California and across the United States. Defendant specifically misrepresents the products as "100% Juice" and/or "100% Pure Juice," despite the fact that they contain added ingredients and additives not naturally present in juice. Below are true and accurate examples of the deceptive labeling and advertising used on these products:

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101





Class Action Complaint

13. Defendant's misrepresentations mislead reasonable consumers into believing that the Products contain only "100% Juice" or "100% Pure Juice," with no added ingredients, additives, or preservatives not naturally found in fruit juice. In truth, the Products contain substances such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor—ingredients that are not naturally present in juice and function as additives or preservatives.

14. As a result, consumers are routinely deceived into purchasing products that are not, in fact, 100% juice. Consumers are willing to pay a premium for products labeled as "100% Juice" because of the perceived health benefits, quality, and nutritional value associated with pure juice. Defendant capitalizes on this consumer preference by falsely labeling its products, thereby gaining an unfair advantage over competitors who comply with labeling laws and consumer protection standards.

15. Accordingly, Defendant's conduct is false, misleading, and unlawful.

16. The Products at issue are all flavors and varieties of Langers 100% Juice products, including but not necessarily limited to Langers Fresh Pressed Pomegranate 100% Juice, Langers 100% Juice products, including, but not necessarily limited to, Langers 100% Pineapple Juice, Langers 100% Apple Berry Juice, Langers 100% Apple Peach Mango Juice, Langers 100% Apple Grape Juice, Langers 100% Apple Orange Pineapple Juice, Langers 100% White Grape Juice, Langers 100% Apple Cranberry Juice, Langers 100% Red Grape Juice, Langers 100% Concord Grape Juice, Langers 100% Grape Juice, Langer Farms 100% Pineapple Coconut Juice, and Langer Farms 100% Organic Watermelon Strawberry Juice, manufactured or sold by Defendant to consumers in the United States and the State of California, which are labeled and advertised with the representations Plaintiff challenges in this complaint.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

17.    Sometime in May, 2025, Plaintiff purchased one of the Products, "Langers Fresh Pressed Pomegranate 100% Juice" from Barons Market located in Murrieta, California, for approximately $5-$7.

18.    Consumers are willing to pay a premium for products labeled as "100% Juice" or "100% Pure Juice" because such labels convey a perception of higher quality, enhanced health benefits, and superior nutritional value. Pure juice is viewed as a reliable source of essential nutrients and phytonutrients, and as a means of meeting dietary recommendations. The chilled juice market, in particular, has experienced a trend toward premiumization, with consumers increasingly seeking products that are fresh, minimally processed, and feature innovative flavor profiles.

19.    Consumers generally regard 100% juice as a healthier and more authentic alternative to juice drinks containing added sugars or other non-juice ingredients. This willingness to pay a higher price reflects their preference for products that support health and wellness objectives.

20.    This consumer preference is underscored by the broader market trend, as global sales of healthy food products reached approximately $825 billion in 2022 and are projected to grow to $1.495 billion in the coming years. These figures reflect a strong and growing consumer demand for less processed products with fewer additives, for which consumers are both eager and willing to pay a premium.[1] Defendant's efforts to capitalize on consumers' demand for healthier products are both misleading and deceptive. Consumers purchase the Products under the false impression that they consist entirely of "100% Juice" and are therefore free from additives and other non-juice ingredients.

///

///

---

[1] *Health and Wellness Foods Market Outlook* (2022 to 2032), Fact.MR, https://www.factmr.com/report/health-and-wellness-foods-market (last visited June 10, 2025).

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

21.    The term "juice" is defined as "the liquid that comes from fruit or vegetables."[2] A product labeled as "100% Juice" is therefore understood by consumers and defined by regulatory standards to consist solely of these natural liquids. This understanding aligns with the U.S. Food and Drug Administration's ("FDA") definition of "100% juice" for food labeling purposes, which limits the term to "juices directly expressed from a fruit or vegetable," excluding any concentrated or reconstituted ingredients.[3] Defendant's use of the terms "100% Juice" and "100% Pure Juice" on the Product labels is therefore false and misleading, as the Products contain additives that are not naturally expressed from fruits or vegetables and thus do not meet the definition of "100% juice" under either common usage or federal law.

22.    The Products contain ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor, which are food additives not directly expressed or extracted from fruit.

23.    **Ascorbic Acid**. The FDA classifies ascorbic acid as an artificial preservative, which falls under the category of food additive.[4] Additionally, ascorbic acid is a synthetic substance that functions as a chemical preservative.[5]

24.    **Pectin**. Pectin is a natural polymer commonly used in the dairy industry as a stabilizing agent.[6] It is also frequently utilized as a gelling agent and as a source of dietary fiber in nutritional supplements.[7]

///

---

[2] *https://dictionary.cambridge.org/us/dictionary/english/juice* (last visited June 10, 2025).
[3] 21 C.F.R. § 101.30(i).
[4] 21 C.F.R. § 182.3013; 21 C.F.R 170.3(e)(1); 21 U.S.C. § 321(s).
[5] *Ascorbic Acid Journey: From Production to Applications*, DolChem, https://dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last visited June 10, 2025).
[6] *PECTIN | Properties and Determination,* ScienceDirect, https://www.sciencedirect.com/topics/neuroscience/pectin (last visited June 10, 2025).
[7] F. Blanco-Pérez et al., *The Dietary Fiber Pectin: Health Benefits and Potential for the Treatment of Allergies by Modulation of Gut Microbiota*, SPRINGER NATURE Link (Sep. 10, 2021), https://doi.org/10.1007/s11882-021-01020-z (last visited June 10, 2025).

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

25.    **Xanthan Gum**. Xanthan gum is authorized in Europe as a food additive.[8] Xanthan gum is a high molecular weight polysaccharide produced by a pure-culture fermentation, hence not naturally found in juice.[9] 21 C.F.R. section 172.695 recognizes xanthan gum as a food additive used as a stabilizer, thickener, suspending agent, bodying agent, or foam enhancer.

26.    **Citric Acid**. The FDA classifies citric acid as a preservative.[10] Scientific research and literature identify citric acid as a preservative based on its chemical structure and functional properties. Its ability to chelate metal ions and maintain an acidic pH allows it to stabilize food products by inhibiting the activity of enzymes responsible for spoilage—such as those that cause enzymatic browning—and by enhancing the performance of antioxidants. These properties contribute to extending the shelf life of processed foods while preserving their flavor and appearance. Although citric acid is sometimes used as a flavoring agent, its preservative function remains active and effective regardless of any secondary purpose.

27.    **Acacia Gum**. Acacia gum is used as a food additive. Acacia gum is a water-soluble substance derived from the trunks and branches of the *Acacia Senegal* tree.[11] 21 C.F.R. section 184.1330 states that, in beverages, acacia gum is used as an emulsifier, a flavoring agent, adjuvant, a formulation aid, a stabilizer and thickener.[12]

*///*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

---

[8] EFSA Panel on Food Additives and Nutrient Sources added to Food (ANS) et al., *Re-evaluation of Xanthan Gum (E 415) as a Food Additive*, EUROPEAN FOOD SAFETY AUTHORITY (Jul. 14, 2017), https://doi.org/10.2903/j.efsa.2017.4909 (last visited June 10, 2025).
[9] *Id.*
[10] *[F]ood Ingredients & Colors*, International Food Information Council and FDA, https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited June 9, 2025).
[11] Muhamad H. Rawl et al., *Manipulation of Gut Microbiota Using Acacia Gum Polysaccharide*, 6 ACS OMEGA 17782, 17782 (2021), https://doi.org/10.1021/acsomega.1c00302 (last visited June 10, 2025).
[12] 21 C.F.R. § 184.1330

28.    **Natural Flavors.** The FDA defines "natural flavor" as an "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating, or enzymolysis, which contains the flavoring constituents derived from spice, fruit, or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional."[13] Many of the ingredients compatible with the FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients. Natural flavors are additives that are not expected in the Products labeled as "100% Juice" or "100% Pure Juice."

29.    **Malic Acid.** Malic acid is used as a food preservative and acidity regulator. Malic acid is a food processing aid and is often used in drinks and many other foods.[14] Malic acid is considered a food additive, and is listed on the FDA Food Additive Status List.[15] Additionally, malic acid is used as a flavor enhancer, flavoring agent, and adjuvant according to 21 C.F.R section 184.1069.

30.    **Organic Flavor.** According to the USDA, organic flavor must consist of at least 95% organically produced ingredients. This includes complex or compounded flavors—often referred to as "organic natural flavors"—which may contain organic concentrates, organic solvents, organic carriers, and organic and/or natural isolate.[16] Despite being labeled as "organic," organic flavoring may still contain certain synthetic or processed substances, including approved food

---

[13] 21 C.F.R. § 101.22

[14] *Summary of TAP Reviewer's Analyses*, USDA Agricultural Marketing Service, https://www.ams.usda.gov/sites/default/files/media/L-Malic%20Acid%20TR.pdf (last visited June 10, 2025).

[15] *Substances Added to Food (formerly EAFUS)*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/food/food-additives-petitions/food-additive-status-list#ftnA (last visited June 10, 2025).

[16] *Labeling Organic Products*, USDA Agricultural Marketing Service, https://www.ams.usda.gov/rules-regulations/organic/labeling (last visited June 10, 2025).

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

additives such as ascorbic acid and sodium citrate.[17]

31.    Defendant, directly and through its agents, maintains substantial contacts with the State of California and derives significant income and benefits from business conducted within the state. Defendant is the owner, manufacturer, and/or distributor of the Products at issue. Together with its agents, Defendant promoted, marketed, and sold these Products throughout the United States, including within California. The unfair, unlawful, deceptive, and misleading representations on the Products' labels were created, authorized, ratified, and/or approved by Defendant and its agents with the intent to mislead and deceive consumers in California into purchasing the Products.

32.    Defendant had knowledge of the falsity of these representations at the time they were made and knowingly included them on the Product labels at the time Plaintiff and the Class Members made their purchases. Furthermore, at all relevant times, Defendant possessed the authority and ability to correct the false and misleading representations, including during the period leading up to and through the events giving rise to the claims asserted herein—specifically, Plaintiff's purchase and the purchases made by all Class Members.

33.    The front labels of Defendant's Products prominently feature the claims "100% Juice" and/or "100% Pure Juice," often accompanied by images of whole fruits. These representations clearly and unambiguously convey to reasonable consumers that the Products are made entirely of juice and contain no added ingredients, additives, or preservatives.

34.    In reality, and contrary to Defendant's representations, the Products contain a variety of added substances—including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor—all of which function as additives or preservatives and are not naturally present in pure juice. The inclusion of these ingredients alters the fundamental composition

---

[17] 7 C.F.R Part 205, Subpart G.

of the Products, making them inconsistent with the representations of "100% Juice" or "100% Pure Juice." As a result, consumers are consistently misled into purchasing the Products under the mistaken belief that they consist solely of juice. Defendant exploits this deception by capitalizing on consumer demand for minimally processed, healthier, and more natural products, thereby securing an unfair competitive advantage through false and misleading labeling practices.

35.    Defendant manufactures, markets, promotes, advertises, labels, packages, and sells the Products, each of which contained its "100% juice" representations on the Products' front-facing labels and packaging.

36.    On the Products' front-facing labels and packaging, Defendant conspicuously displays the "100% Juice" and/or "100% Pure Juice" claims yet fails to disclose that the Products contain additives, including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

37.    Defendant's "100% Juice" representations lead reasonable consumers, like Plaintiff, into believing that the Products are exclusively comprised of "100% Juice" and/or "100% Pure Juice," and thus do not contain any additives or preservatives not naturally found in fruit juice.

38.    Consumers are consistently misled into purchasing the Products for their advertised ingredients and characteristics when, in fact, no such nutritional benefits are received given the presence and high concentration of additives.

39.    Defendant's "100% Juice" and/or "100% Pure Juice" representations were and are material to reasonable consumers, including Plaintiff, in making the decision to purchase the Products, as set forth herein. Plaintiff would not have purchased the Product had she known the "100% Juice" and/or "100% Pure Juice" representations were misleading.

40.    Defendant's representations are false and deceptive because the Products, contrary to their labeling, are not comprised of "100% Juice."

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

41.     Consumers, including Plaintiff, who purchased the Product(s), did not know, and had no reason to know, at the time of purchase, that the Products' "100% Juice" and/or "100% Pure Juice" representations were deceptive and fraudulent. The Products' labeling and packaging misled consumers to believe that the Products were exclusively comprised of "100% Juice" and "100% Pure Juice," and thus did not contain any additives or preservatives not naturally found in fruit juice. The Products did not contain a clear, unambiguous, and conspicuously displayed statement informing reasonable consumers that the Products are not 100% juice but instead include ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Even if Defendant included disclaimers or qualifying statements elsewhere on the packaging—such as in fine print or on the side or back panels—such disclosures are insufficient to cure the deception created by the prominent "100% Juice" claim on the front label. Studies indicate that only approximately 7.7% to 11.6% of consumers examine side or back labels prior to making a purchase. As such, any contradictory or qualifying language, including ingredient lists, is not sufficiently conspicuous to override the clear and dominant front-panel representation. A reasonable consumer would not be expected to notice or interpret these secondary disclosures as modifying or contradicting the "100% Juice" claim.

## **RELIANCE AND INJURY**

42.     In making her purchase of the Product(s), Plaintiff relied upon Defendant's labeling, marketing, and advertising claims, including the "100% Juice" front label claims. The representations led her to believe that the Product(s) were exclusively comprised of "100% Juice" and/or "100% Pure Juice," and thus did not contain any additives not naturally found in fruit juice.

43.     At the time of the purchase, Plaintiff was unaware that Defendant's "100% Juice" representations were false—i.e., that the Products contained

additives, such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

44. Plaintiff did not observe any disclaimer, qualifier, or other explanatory statement or information on the Product's front-faced labels or packaging that disclosed or suggested that the Product(s) contained additional ingredients, additives and preservatives that are not naturally found in fruit juice, including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

45. But for the Defendant's "100% Juice" representations, Plaintiff would not have purchased the Product(s) or would not have paid as much for it.

46. Plaintiff does not possess any specialized knowledge, skill, experience, or education in manufacturing process of various beverages or formulations of Defendant's Products, including specific additives added to the Products. As a result, she is unable to determine whether the Products conform to their "100% Juice" and/or "100% Pure Juice" representations.

47. Plaintiff regularly visits stores where Defendant's Products are sold and intends to purchase the Products again in the future if she can be sure that the Products are compliant with the state consumer protection laws and deliver 100% juice. But absent injunctive relief, Plaintiff cannot now or in the future rely on the Products' labels because she cannot know whether they remain deceptive, and she may reasonably, but incorrectly, assume the Products were improved or otherwise changed to comport with their front labels. Plaintiff is an average consumer who is not sophisticated in her knowledge of ingredients in juice beverages. A permanent injunction prohibiting use of a materially false and misleading label would enable Plaintiff to rely confidently on the labels in making her future purchase decisions. Absent injunctive relief, Plaintiff and other reasonable consumers will be unable to assess the truthfulness of the Products' labels.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

48.    Plaintiff would like to purchase the Products again in the future to obtain the benefits promised by Defendant's "100% Juice" and "100% Pure Juice" representations. However, despite knowing that the Products were previously misrepresented, Plaintiff would likely—and reasonably, but mistakenly—assume that the Products now conform to those representations. As a result, Plaintiff faces an ongoing risk of being misled into purchasing the Products again under the false belief that Defendant has corrected the labeling and that the Products are no longer falsely advertised or warranted. Consequently, Plaintiff is currently, and will continue to be, deprived of the ability to rely on Defendant's representations when deciding whether to purchase the Products.

## **DELAYED DISCOVERY**

49.    Plaintiff was a reasonably diligent consumer looking for products for herself and her family household that were generally healthy and nutritious. Nevertheless, Plaintiff did not discover that Langer Juice's labeling of the Products was false, deceptive, or misleading until after she purchased the Product(s) in reliance on the Product's "100% Juice" representations.

50.    When purchasing the Product, Plaintiff was unaware that the Product contain additives, including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

51.    Plaintiff is not a nutritionist, food expert, or food scientist; she is a lay consumer who did not possess the specialized knowledge Langer Juice had which otherwise would have enabled her to know the Products contain a range of added substances—including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor—all of which are additives or preservatives not naturally found in juice. These ingredients alter the composition of the Products, rendering them inconsistent with the "100% Juice" or "100% Pure Juice" claims.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

52.   Plaintiff, in the exercise of reasonable diligence, could not have discovered Langer Juice's deceptive practices earlier because, like nearly all consumers, because of the Products' front-facing labels and packaging, she believed that the Products are exclusively comprised of "100% Juice" and/or "100% Pure Juice," and thus do not contain any additives or preservatives not naturally found in fruit juice.

## CLASS ACTION ALLEGATIONS

53.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure ("FRCP") 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Class defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this action, purchased the Products, for purposes other than resale ("**California Subclass**").

(the "Nationwide Class" and "California Subclass" are collectively referred to as the "Class").

54.   Plaintiff reserves the right to modify or amend the definitions of the Class and/or Subclasses after she has had an opportunity to conduct discovery.

55.   ***Numerosity. FRCP 23(a)(1).*** The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the proposed Class contains at least thousands of purchasers of the Products who have been damaged by Defendant's conduct as alleged herein. The number of Class Members is unknown to Plaintiff but could be discerned from the records maintained by Defendant.

56.   ***Existence of Common Questions of Law and Fact. FRCP 23(a)(2).*** This action involves common questions of law and fact, which include, but are not limited to, the following:

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

a.  Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products;

b.  Whether Defendant's conduct of advertising and selling the Products as "100% Juice" and/or "100% Pure Juice" when they are not constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code sections 1750, *et seq.*;

c.  Whether Defendant used a deceptive representation in connection with the sale of the Products in violation of Civil Code sections 1750, *et seq.*;

d.  Whether Defendant represented that the Products have characteristics or qualities that they do not have in violation of Civil Code sections 1750, *et seq.*;

e.  Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code sections 1750, *et seq.*;

f.  Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code sections 17500, *et seq.*;

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising were and are untrue or misleading in violation of Business and Professions Code sections 17500, *et seq.*;

h.  Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code sections 17200, *et seq.*;

i.  Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code sections 17200, *et seq.*;

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

j. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code sections 17200, *et seq*.;

k. Whether Plaintiff and the Class paid more money for the Products than they actually received;

l. How much more money Plaintiff and the Class paid for the Products than they actually received;

m. Whether Defendant's conduct constitutes breach of warranty;

n. Whether Plaintiff and the Class are entitled to injunctive relief; and

o. Whether Defendant was unjustly enriched by its unlawful conduct;

57. ***Typicality. FRCP 23(a)(3).*** All members of the Class have been subject to and affected by the same conduct and omissions by Defendant. The claims alleged herein are based on the same violations by Defendant that harmed Plaintiff and members of the Class. By purchasing Products during the relevant time period, all members of the Class were subject to the same wrongful conduct. Plaintiff's claims are typical of the Class's claims and do not conflict with the interests of any other members of the Class. Defendant's unlawful, unfair, deceptive, and/or fraudulent actions and breaches of warranty concern the same business practices described herein irrespective of where they occurred or were experienced.

58. ***Adequacy. FRCP 23(a)(4).*** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

59. ***Injunctive and Declaratory Relief. FRCP 23(b)(2).*** Defendant's actions regarding the deceptions and omissions regarding Products are uniform as to members of the Class. Defendant has acted or refused to act on grounds that

apply generally to the Class, so that final injunctive relief as requested herein is appropriate respecting the Class as a whole.

60.    ***Predominance and Superiority of Class Action. FRCP 23(b)(3).*** Questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

a.    Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

b.    It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

c.    When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

d.    A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

e.    A class action regarding the issues in this case does not create any problems of manageability; and

f.    Defendant has acted on grounds generally applicable to the members of the Class, making class-wide monetary relief appropriate.

61.    Class treatment is appropriate under FRCP 23(a) and both 23(b)(2) and 23(b)(3). Plaintiff does not contemplate class notice if the Class is certified under FRCP 23(b)(2), which does not require notice, and notice via publication if the Class is certified under FRCP 23(b)(3) or if the Court determines class notice is required notwithstanding that notice is not required under FRCP 23(b)(2). Plaintiff will, if notice is required, confer with Defendant and seek to present the

1    Court with a stipulation and proposed order on the details of a class notice plan.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violations of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of the California Subclass)

62.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

63.    California Bus. & Prof. Code sections 17200, *et al.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

64.    Defendant, in its advertising and packaging of the Products, made misleading statements regarding the quality and characteristics of the Products—despite the fact that the Products are not "100% Juice" or "100% Pure Juice" because they contain additives. Such claims appear on the front label and packaging of the Products, which are sold at retail stores and point-of-purchase displays, as well as Defendant's official website, and other retailers' advertisements that have adopted Defendant's advertisements.

65.    Defendant does not have any reasonable basis for the Products' "100% Juice" and/or "100% Pure Juice" claims because the Products contain additives, such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Although Defendant knew and knows that the Products are not "100% Juice" or "100% Pure Juice," Defendant intentionally advertised and marketed the Products as 100% juice products.

66.    Defendant has exclusive knowledge that the ingredients in the Products included additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the ingredients in the Products. Defendant's control of the manufacturing, design,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   and distribution of the Products gives Defendant exclusive knowledge of the

2   presence of the additives.

3       67.   Defendant's labeling and advertising of the Products led to, and

4   continues to lead to, reasonable consumers, including Plaintiff, believing that the

5   Products are "100% Juice" and "100% Pure Juice," and do not contain any

6   additives not naturally found in fruit juice.

7       68.   Plaintiff and the California Subclass have suffered injury in fact and

8   have lost money or property as a result of and in reliance upon the Defendant's

9   "100% Juice" and/or "100% Pure Juice" representations—namely, Plaintiff and

10   the California Subclass lost the purchase price for the Products they bought from

11   Defendant.

12       69.   Defendant's conduct, as alleged herein, constitutes unfair, unlawful,

13   and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair

14   competition and provides, in pertinent part, that "unfair competition shall mean

15   and include unlawful, unfair or fraudulent business practices and unfair,

16   deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In

17   addition, Defendant's use of various forms of advertising media to advertise, call

18   attention to, or give publicity to the sale of goods or merchandise that are not as

19   represented in any manner constitutes unfair competition, unfair, deceptive,

20   untrue or misleading advertising, and an unlawful business practice within the

21   meaning of Business and Professions Code sections 17200 and 17531, which

22   advertisements have deceived and are likely to deceive the consuming public, in

23   violation of Business and Professions Code section 17200.

24       70.   Defendant failed to avail itself of reasonably available, lawful

25   alternatives to further its legitimate business interests.

26       71.   All of the conduct alleged occurred in Defendant's business.

27       72.   Defendant's wrongful conduct is part of a pattern, practice and/or

28   generalized course of conduct.

73.     Pursuant to Business and Professions Code sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

74.     As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to prevent future harm.

**"Unfair" Prong**

75.     Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

76.     Defendant's action of mislabeling the Products as "100% Juice" and/or "100% Pure Juice," does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

77.     Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

78.     Here, Defendant's conduct of labeling the Products as "100% Juice" and/or "100% Pure Juice," when the Products contain additives has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

79.     Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

80.     Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's "100% Juice" and "100% Pure Juice" representations constitute an unfair business practice within the meaning of California Business and Professions Code section 17200.

81.     There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as "100% Juice" and/or "100% Pure Juice." All of the conduct alleged occurs in Defendant's business. Defendant's wrongful conduct is part of a repeated pattern or generalized course of conduct.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

82.     Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.

83.     Plaintiff and the California Subclass have suffered injury in fact and lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that were exclusively comprised of "100% Juice" and/or "100% Pure Juice," and did not contain any additives. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Fraudulent" Prong**

84.     The UCL considers conduct fraudulent (and prohibits such conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

85.     Defendant used the "100% Juice" and "100% Pure Juice" representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. These representations are deceptive, and Defendant knew, or should have known, of their deception. These representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

86.     As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code section 17200.

87.     Plaintiff and the California Subclass reasonably and detrimentally relied on Defendant's "100% Juice" and/or "100% Pure Juice" representations to their detriment in that they purchased the Products.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

88.    Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as "100% Juice" and/or "100% Pure Juice." All of the conduct alleged occurs in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

89.    Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.

90.    Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that they believed were exclusively comprised of "100% Juice" and/or "100% Pure Juice," when, in fact, the Products contained additives. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Unlawful" Prong**

91.    The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

92.    Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

93.    Additionally, Defendant's use of the "100% Juice" and/or "100% Pure Juice" representations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

deceit), and 1711 (deceit upon the public), as set forth above.

94. Defendant's conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's omission of material facts, i.e., the Products contain additives, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

95. Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

96. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the "100% Juice" and/or "100% Pure Juice" representations.

97. All of the conduct alleged occurs in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

98. Pursuant to Business and Professions Code section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.

99. Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Products

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

are exclusively comprised of "100% Juice" and/or "100% Pure Juice," and do not contain any additives. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**SECOND CAUSE OF ACTION**
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

100.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

101.    The False Advertising Law, codified at Cal. Bus. & Prof. Code sections 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

102.    Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading "100% Juice" and/or "100% Pure Juice" representations to the public through the Products' labeling, packaging, and advertising. These representations were deceptive because the Products did not conform to them. These representations were material because they are likely to and did mislead reasonable consumers into purchasing the Products.

103.    In making and disseminating the representations alleged herein, Defendant knew or should have known that its "100% Juice" and/or "100% Pure Juice" claim was untrue or misleading, and acted in violation of Section 17500.

104.    Defendant has exclusive knowledge of the Products' ingredients that include additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the ingredients in the Products. Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of additives.

///

105.   Defendant's "100% Juice" and/or "100% Pure Juice" representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

106.   As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to prevent future harm.

### THIRD CAUSE OF ACTION
**Violations of the California Consumers Remedies Act**
**Cal. Civ. Code §§ 1750,** *et seq.*
**(On Behalf of the California Subclass)**
**(Injunctive Relief)**

107.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

108.   The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

109.   The Products are "goods," as defined by the CLRA in California Civil Code section 1761(a).

110.   Defendant is a "person," as defined by the CLRA in California Civil Code section 1761(c).

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

111.   Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code section 1761(d).

112.   The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

113.   Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent "100% Juice" and/or "100% Pure Juice" representations:

   a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

   b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

   c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

   d. Section 1770(a)(16) by representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

114.   Defendant's uniform "100% Juice" and/or "100% Pure Juice" representations on the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations were misleading.

115.   Defendant has exclusive knowledge that the Products' ingredients contain additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the ingredients of the Products. Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of the additives.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

116. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

117. Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were misled by Defendant's "100% Juice" and/or "100% Pure Juice" representations on the front labels and unaware of the existence of additives, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

118. Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on Defendant's "100% Juice" and/or "100% Pure Juice" representations in deciding to purchase the Products. These representations were together a substantial factor. These representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

119. Pursuant to California Civil Code section 1782, on or about June 3, 2025, Plaintiff's counsel, acting on behalf of all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Langer Juice Company, Inc. at its headquarters and principal place of business registered with the California Secretary of State (16195 Stephens Street, City of Industry, California 91745) and its registered agent for service of process (CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Sacramento, CA 95833). Should the Defendant not comply with Plaintiff's demand letter, Plaintiff intends to amend this Complaint to seek damages under the Consumers Legal Remedies Act, including but not necessarily limited to, Cal. Civ. Code sections 1770(a)(5), (7), and (9).

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

120.    Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to prevent Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices can continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from employing the unlawful methods, acts, and practices alleged pursuant to Section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products.

### FOURTH CAUSE OF ACTION
### Breach of Warranty
### (On Behalf of the Nationwide Class and California Subclass)

121.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

122.    By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to Defendant's representations that the Products contain "100% Juice" and/or "100% Pure Juice."

123.    By advertising and selling the Products at issue, Defendant—a merchant of goods—made affirmations of fact and promises that the Products were merchantable and conformed to the representations made on their

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

packaging, labeling, and in marketing and advertising materials, as described herein. These representations, together with the implied warranty of merchantability, constitute express and implied warranties that formed part of the basis of the bargain between Plaintiff, the Class Members, and Defendant—specifically, that the Products conformed to Defendant's "100% Juice" and/or "100% Pure Juice" representations.

124.    Contrary to Defendant's express warranties, the Products do not conform to the representations that they are "100% Juice" and/or "100% Pure Juice." As such, Defendant has breached its warranties regarding the nature and quality of the Products.

125.    Defendant possesses exclusive knowledge regarding the presence of additives in the Products. As the manufacturer, Defendant is in a superior position relative to consumers, including Plaintiff, with respect to information about the Products' ingredients. Defendant's control over the design, manufacturing, and distribution processes grants it unique and exclusive access to knowledge concerning the inclusion of additives in the Products.

### FIFTH CAUSE OF ACTION
### Unjust Enrichment/Restitution
### (On Behalf of the Nationwide Class and California Subclass)

126.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

127.    By purchasing the Products, Plaintiff and members of the Class conferred a benefit upon Defendant in the form of the purchase price paid. Defendant was aware of and appreciated this benefit, as its ability to generate revenue from the sale of the Products was directly dependent on consumer purchases.

128.    Defendant had exclusive knowledge that the Products contained additives. As the manufacturer, Defendant was in a superior position to know and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

disclose the true nature of the Products' ingredients. Defendant's control over the design, manufacturing, and distribution of the Products provided it with exclusive access to information regarding the presence of these additives, which was not available to consumers, including Plaintiff.

129. Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations that the Products are "100% Juice" and/or "100% Pure Juice."

130. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to prevent future harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment as follows:

a. That this action be certified as a Class Action, Plaintiff be appointed as the representative of the Class, and Plaintiff's attorneys be appointed Class counsel;

b. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. A temporary, preliminary, and/or permanent order for injunctive relief requiring Defendant to cease its unlawful advertising practices for the

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Action Complaint

benefit of consumers and the public at large;

d.     An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and, also, to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

e.     Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of its wrongful conduct;

f.     Prejudgment and post judgment interest;

g.     Costs of this suit;

h.     Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5; and

i.     Awarding any and all other relief that this Court deems necessary, just, equitable, and proper.

COHELAN KHOURY & SINGER

Dated: June 10, 2025          By:_____
                                    Isam C. Khoury, Esq./Maggie Realin, Esq.
                                    Attorneys for Plaintiff Hattie K. Arres, on behalf
                                    of herself and all others similarly situated

## DEMAND FOR JURY TRIAL

Plaintiff demands jury trial for all claims so triable.

COHELAN KHOURY & SINGER

Dated: June 10, 2025          By:_____
                                    Isam C. Khoury, Esq./Maggie Realin, Esq.
                                    Attorneys for Plaintiff Hattie K. Arres, on
                                    behalf of herself and all others similarly
                                    situated

Class Action Complaint

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101